## ED McHENRY v. STATE.

No. A-5100.  Opinion Filed April 24, 1926.
(245 Pac. 1001.)

A. J. Stevens and Mauntel & Spellman, for plaintiff in error.

Geo. F. Short, Atty. Gen., for the State.

EDWARDS, J.  The plaintiff in error, hereinafter called defendant, was convicted in the district court of Woods county on a charge of driving an automobile while intoxicated, and sentenced to serve a term of six months in the state penitentiary and to pay a fine of $300.

Defendant contends first that the law under which the prosecution was had (section 3, c. 16, Session Laws 1923), is unconstitutional as being in violation of section

57, art. 5, of the Constitution. This contention has been decided adversely to defendant in the case of Simpkins v. State (Okla. Cr.) 249 P. 168.

The complaint is next made that there is no sufficient proof of intoxication. The evidence is that early in the morning on the 30th day of July, 1923, the sheriff saw defendant and some others in an automobile on the streets of Alva, arrested defendant on the claim that he was intoxicated, and took him to jail. The evidence of intoxication is as follows:

The witness Martin testified:

"Q. I will ask you if you saw Mr. McHenry on or about the 30th day of July, 1923? A. I did.

"Q. Just go ahead and tell the court and jury about where you saw him and what time of day it was, all the circumstances surrounding this occurrence, where you saw Mr. McHenry? A. I left my home on Barnes avenue about 7 o'clock in the morning; right around that time. I was driving west on Barnes avenue. As I came down along about Third street, along in there somewhere, I seen Ed McHenry and Jess Downard and Shorty Parker drive by in a Marmon car, and I went down there, the next block I think it was, and turned around and followed them. They went east and turned south on a street right east of the canyon, the east part of town; I don't know just what the name of that street is now. I followed them down that street to Normal street. As they turned to go on Normal street, I ran my car ahead of them and stopped them, placed Ed McHenry under arrest, and brought him back to town.

"Q. Did you have any conversation there at that time with these men? A. Yes, sir. * * *

"Q. Do you remember Mr. McHenry taking any part in the conversation over there at Farris? A. Well, I don't remember now whether he did or not. * * *

"Q. Hugh, did you search the car out there on Normal street? A. I don't believe I did.

"Q. Did you look into it?   A. I looked into it; I got into the car.

"Q. Did you find anything?   A. No, sir.

"Q. Any liquor?   A. No, sir. * * *

"Q. How fast were they going, Hugh?   A.   Oh, I judge about 10 or 12 miles an hour.

"Q. Who was driving?   A. Ed McHenry.

"Q. Was he going down the road straight?   A. Well, fairly straight, I guess; I drove down another block, I think it was, before I turned.

"Q. The car wasn't swerving back and forth down the road, was it?   A. No; I think he was driving it pretty straight down the street. * * *

"Q. Did he stagger any?   A.   No; I think he got out and stood by the car. * * *

"Mr. Martin, will you describe to the jury Mr. McHenry's condition at the time when you stopped the car out there on Normal street?   A. Yes, sir.   He was intoxicated. * * *

"Q. Did you smell any liquor on his breath at that time, Mr. Martin?   A. Yes, sir.

"Q. Now, how could—can you describe his actions, Mr. Martin, if any?   A. Yes; I could tell he was intoxicated by the looks of the man and the way he talked and the way he smelled.

"Q.  Did he talk sensibly, Mr. Martin?   A. Well, about the sum and substance of the conversation was I asked him what he was doing up there.   He said he was looking for Sam Corey.   I told him Sam Corey lived at Waynoka; he didn't live out there in the weeds.   We talked back and forth.   Of course, he claimed he wasn't intoxicated.   We didn't have much conversation.   I stayed there only a short time.

"The Court: You say you could tell from the way he looked he was intoxicated.   Tell us how he looked that indicated to you that he was intoxicated?   A. Well,

by his eyes; that would be about the only way I could explain it; that I could just look at him and tell he was drunk, like looking at any drunk man; I don't know how I could explain the look he had. * * *"

The witness Farris, who was called by the sheriff to the place of arrest to take charge of the defendant, testified:

"Q. Did you have any conversation with Mr. McHenry at that time or was there any conversation in which he took a part? A. Well, I don't remember that Ed said anything at that time.

"Q. Did you observe his condition at that time, Mr. Farris? A. Well, he was under the influence of intoxicating liquor.

"Q. Now state the facts about his appearance and his actions, Mr. Farris, that lead you to that conclusion. A. Well, really the appearance and expression of his eyes showed the fact that he was under the influence of intoxicating liquor more than any other thing.

"Q. What did you do then, Mr. Farris? A. Mr. Martin asked me to bring the boys on down here to the courthouse. I got into the car with Ed McHenry, Jess Downard, and Parker and came down to the courthouse.

"Q. Did you order Ed to drive you down? A. Well, I told him we would come down to the courthouse. Yes; he got under the wheel.

"Q. He got under the wheel and you got in behind? A. I believe that is right.

"Q. And he brought you all around one block south of your house, did he? A. Yes, sir; that is right; one block south, a block west, and back north a block. * * *

"Q. Did you search the car after you got to the courthouse? A. No, sir; I didn't.

"Q. Do you know whether there was any liquor in it, of your own knowledge? A. Well, I didn't see any in it.

"Q. There was not?  A. Well, I would say there wasn't any in it. * * *

"Q. When he drove you back up town, he drove down the road all right, didn't he, Brad?  A. Yes; he drove all right, drove very slow, but he drove all right. * * *

"Q. Yes; but when you got out of the car here at the jail, he walked down all right, didn't he?  A. He walked down all right; yes, sir. * * *

"Q. Well, did you note any difference in his driving this car then than otherwise?  A. Well, I don't know; this is the first time I ever rode in the car with him. * * *"

The witness Cameron, who was jailer and received defendant shortly after his arrest, testified:

"Q. I will ask you if you know whether or not at that time Mr. McHenry was intoxicated or under the influence of intoxicating liquor?  A. I considered him drunk. * * *

"Q. Well, did you have any conversation with him at that time?  A. I just spoke to him and from the fumes of whisky and the way he looked, I considered him drunk. * * *

"Q. And you say you judge he was drunk because you smelled liquor on him?  A. Yes, sir; and his appearance. * * *

"Q. Well, what else did you observe about him; did he stagger down there in the jail?  A. No; I can't say that he did.

"Q. Did you hear him say anything; did he say anything to you out of the ordinary?  A. No; I didn't talk to him but mighty little. * * *"

Defendant testified in his own behalf that on the night in question he was operating a cafe in the city of Alva, which closed about 1 o'clock, and about that time one Covalt came up with a car, and a traveling man there desired to make a drive to Avard to catch a train, and defendant, Parker, and Downard were going along with Covalt.  Defendant testified that Covalt decided

he would not go, and asked defendant to drive; that he made the drive to Avard, waited some time at the depot, and after the train left they drove back, and on the road had car trouble, which delayed them, and, when they finally returned to Alva, it was early in the morning, and, as one of the party was to go to work at 7 o'clock, they started to drive out to the end of the pavement and back, when they were accosted by the sheriff. He testified that he was not intoxicated and had not drunk any liquor from the time he left the restaurant until arrested, and that there was none in the car that he knew of. He also offered the evidence of Dr. Simons, who was called to the jail, and examined defendant about 10:30 to determine whether or not he was intoxicated, and testified that he was sober. Defendant also offered the evidence of Fred Parker, who was in the car with him on the trip, who corroborated the testimony of defendant fully, and who testified that there was no whisky in the car on that night and that defendant nor any of the party had been drinking.

There was offered also the evidence of Joe Covalt, in substance, that he came to the residence of defendant on the night in question about 1 o'clock and delivered the car to him to make the trip to Avard; that he saw no indication that defendant was drinking; and that there was no liquor in the car. Also defendant offered the evidence of Worth Clark that he saw defendant at the courthouse early on the morning of the arrest, observed his condition, and saw nothing to indicate that defendant was intoxicated.

This court has adopted the rule that, where the evidence reasonably supports the verdict, its weight and credibility is for the jury, and, in the absence of unusual circumstances, it will not set aside a judgment for insufficiency of the evidence; and this is true, although the evidence may be conflicting or such that different inferences

160

might be drawn. But where the verdict is clearly against the weight of the evidence or appears to have been influenced by passion or prejudice, or where the jury could not rationally find the guilt of a defendant, the court will set aside a verdict as not sustained by the evidence. Here the evidence is that the defendant was driving at a very moderate rate of speed; no circumstances indicating intoxication were testified to either in the manner of driving, the talk, or actions of defendant. No liquor was found about the car, and several witnesses, who appeared to be disinterested and were in a position to know, testified that defendant was not drinking. The officer to whom defendant was delivered at the time of his arrest seated himself in the back of the car and directed defendant to drive through the streets to the jail. This confutes his statement that defendant was intoxicated.

From a consideration of all the evidence, we think the evidence did not reasonably prove the intoxication of defendant. The judgment should be reversed for insufficiency of the evidence.

The case is reversed and remanded, with instructions to the lower court to dismiss.

BESSEY, P. J., and DOYLE, J., concur.